Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2008 | DATE | 12/1/2000 |
| CASE TITLE | George Finan vs. Field Holdings, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and/or Motion for Summary Judgment [10] is denied. Defendants' Motion to Dismiss for Lack of Jurisdiction and/or for Summary Judgment [4] is denied as moot. This case is remanded to state court.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | DEC 04 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 12 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RJ | courtroom deputy's initials | 00 DEC -4 AM 10: 45 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE FINAN,                          )
                                       )
                    Plaintiff,         )
                                       )
         v.                            )   No. 00 C 2008
                                       )
FIELD HOLDINGS, INC. d/b/a FIELD       )   Judge Joan B. Gottschall
CONTAINER COMPANY, and RICK BISHOP,    )
                                       )
                    Defendants.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff George Finan has brought suit under Illinois state law for the intentional infliction of emotional distress ("IIED") against his former employer, Field Holdings, Inc., d/b/a Field Container Company, and his former co-worker, Rick Bishop. According to Finan's complaint, Bishop harassed and threatened him at work, in front of other employees, on October 9, 1999. Specifically, the complaint alleges that Bishop committed several acts of "extreme and outrageous conduct," including:

- making profane and derogatory remarks to Finan;

- repeatedly threatening Finan with bodily harm by stating that he "was going to enjoy pulverizing" Finan's face and that Finan would "get his outside" once they left work;

- spitting into Finan's face while threatening him with bodily harm;

- repeatedly leaving the area where Finan was working, then returning to continue verbally harassing and threatening Finan with violence;

- waiting for Finan after work, then speeding toward him in an automobile while Finan was walking on the street.

(Am. Compl. ¶ 4) Finan further alleges that Bishop's conduct forced Finan to leave his job at Field Container. He seeks compensatory damages and the costs of suit.

Defendants removed this case from Illinois state court based on the existence of federal question jurisdiction. Finan filed an objection to removal, but never filed a motion to remand. Based on the parties' representations at the June 8, 2000 status hearing, it was determined that defendants' motion to dismiss and Finan's remand argument both turn on the existence of federal jurisdiction, and that resolution of the motion to dismiss would settle the jurisdictional issue. For that reason, only the motion to dismiss was briefed, and Finan's remand efforts were not pursued.

## Analysis

In their motion, defendants seek dismissal on two preemption grounds: first, that the complaint is preempted by the National Labor Relations Act, 29 U.S.C. §§ 157, 158 ("NLRA"), under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959); and second, that the complaint is preempted under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). The court finds that preemption is not warranted on either ground.

In *Garmon*, the Supreme Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245. Defendants argue that Bishop's alleged conduct, if true, would constitute unfair labor practices in violation of section 8 of the Act, and that the claims based on that conduct are accordingly preempted. As support for this argument, they point to an NLRB charge filed by Finan that was based, in part, on Bishop's

October 9 conduct. The substance of that charge, in its entirety, stated:

> On October 9, 1999, Rick Bishop, President of the Marseilles Division of the Field Container Company was both verbally and physically threatening to various Union members and office holders, including George Finan, Steven Schwarz and Leo Schunke. A copy of a Grievance issued on this matter and an accompanying police report later filed, regarding the same events are attached and incorporated herein by reference.
>
> On numerous occasions prior to October 9, 1999, George Finan was verbally harassed and threatened by Rick Bishop, however, not to the extent that has occurred on this date. Each of the prior events where contact and threats have occurred, as well as on this date, concerned company/union issues and the continued efforts of Union Officers, such as George Finan, to bring these issues to the attention of management.
>
> As a result of this occurrence, George Finan, the Union President, felt it necessary to resign from the employment of the Field Container Company for his own safety, the same being the direct result of the harassment, intimidation and threats received by him from Rick Bishop, President of the Marseilles Division of the Field Container Company.
>
> Following his resignation, George Finan attempted to obtain employment elsewhere. However, upon information and belief, it is believed that Rick Bishop took retaliatory action against George Finan by contacting various individuals located at potential employers and indicated that George Finan was not a suitable potential employee.

(Exh. B to Bishop Decl.) According to defendants, Finan's decision to file a charge, as well as the substantive overlap between the charge and the complaint's allegations, suggest that the events at issue fall within the Board's jurisdiction.

The applicability of *Garmon*'s preemption analysis is not absolute. In *Farmer v. United Bhd. of Carpenters & Joiners*, 430 U.S. 290 (1977), the Supreme Court addressed whether a state law IIED claim is preempted by sections 7 and 8 of the NLRA. In order to escape preemption, the *Farmer* Court noted that such claims must be "either unrelated to employment discrimination

3

or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." *Id.* at 305. The claim also must be based on "outrageous" conduct. *Id.*

The *Farmer* Court's reasoning lends insight into the proper resolution of this case, and so is worth quoting at some length:

> If the charges in Hill's complaint were filed with the Board, the focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of Union officials discriminated or threatened discrimination against him in employment referrals for reasons other than failure to pay Union dues. . . . Whether the statements or conduct of the respondents also caused Hill severe emotional distress and physical injury would play no role in the Board's disposition of the case, and the Board could not award Hill damages for pain, suffering, or medical expenses. Conversely, the state-court tort action can be adjudicated without resolution of the "merits" of the underlying labor dispute. Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress. . . . The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities. To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context.

*Id.* at 304-05.

While the factual circumstances surrounding Finan's complaint differ from those in *Farmer*, they are sufficiently analogous to warrant application of the *Farmer* Court's analysis. Because of the fundamental differences between Finan's IIED claim and any claim that would be subject to NLRB action, the court concludes that the "potential for interference" with the federal scheme "is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." *Id.* at 304.

In determining whether Bishop's conduct toward Finan on October 9 constitutes an

4

intentional infliction of emotional distress under Illinois law, the court need not consider the other conduct alleged in the NLRB charge that, together with the October 9 abuse, comprises the alleged plan by Bishop to punish union-related advocacy. The court need only determine whether Bishop's October 9 conduct toward Finan was extreme and outrageous, whether he intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so, and whether his conduct in fact caused severe emotional distress. *See generally Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994). It is certainly foreseeable that Bishop's conduct would give rise to a valid IIED claim without violating the NLRA. Indeed, the NLRB's dismissal of Finan's charge suggested that such might be the case, as it characterized the confrontations as "personal, albeit heated, arguments unrelated to Mr. Finan's protected Union activities." (Exh. C to Bishop Decl.) Under the *Farmer* Court's approach, this court detects minimal potential for interference with the federal statutory scheme if Finan's IIED claim is allowed to proceed.

The *Farmer* Court conditioned its holding on the fact that the alleged conduct was "outrageous," reasoning that "[t]he potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts." 430 U.S. at 305-06. Defendants' characterization of Bishop's alleged conduct as an example of such robust language and personality clashes lacks credibility. Bishop allegedly threatened violence against Finan, spit in his face, then raced his car toward him. Such conduct goes beyond the routine squabbles between co-workers and day-to-day disputes that can be expected in the workplace.

Also weighing against preemption is *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133 (7th Cir. 1987), in which the Seventh Circuit applied the *Farmer* standard to an IIED claim that was based on factual allegations somewhat similar to those in this case. During a verbal and physical altercation with Keehr at work, Keehr's supervisor made an offensive remark about Keehr's wife. Keehr alleged that the incident was part of management-directed plan for supervisors to make crude and vulgar remarks to certain employees in order to provoke the employee to throw a punch at the supervisor. *See id.* at 135. This was intended to give the company a basis for discharging such employees. *See id.* Keehr brought an IIED claim and a claim for the invasion of his privacy. *See id.* The Seventh Circuit held that Keehr's IIED claim was not preempted, agreeing with the district court's reasoning that the claim was "based on the abusive manner in which the plan to get Bruce Keehr fired was carried out, not a claim based on the plan itself." *Id.* at 136. According to the Seventh Circuit, Keehr "was not seeking damages based on the fact of discriminatory treatment; instead, he limited his claim to damages flowing from the manner adopted by CF management to carry out its plan." *Id.* at 136-37.

Defendants attempt to distinguish *Keehr* on the ground that Keehr "had not filed an NLRB charge or a union grievance relating to outrageous statements made by the supervisor." (Reply at 3) Further, whereas Keehr's suit challenged the means by which management carried out its plan to get rid of Keehr, defendants contend that in this case, "the alleged plan to get Plaintiff itself consisted of the alleged abuse by Bishop concerning Company/Union issues." (*Id.*) In that regard, "the alleged plan and the alleged means were the same." (*Id.*)

The court does not believe that such a sharp distinction can be drawn between this case

6

and *Keehr*. In *Keehr*, the management's plan was to provoke Keehr – by using vulgar remarks – into throwing a punch at his supervisor in order to justify his dismissal. The means of accomplishing the plan – *i.e.*, the particular vulgar remarks chosen – was actionable under state tort law despite the fact that the underlying scheme undoubtedly would have been actionable under the NLRA.

In this case, the existence of an underlying plan is implied, but never explicitly stated, in Finan's NLRB charge. The charge accuses Bishop of harassing and threatening other union members and officers besides Finan both on and before October 9 in relation to the raising of company/union issues. The charge also accuses Bishop of attempting to sabotage Finan's efforts to obtain employment elsewhere. The unspoken but unavoidable conclusion to be drawn from the charge's allegations is that Bishop sought to deter – or at least punish – union members' advocacy related to company/union issues.

The scope of Finan's amended complaint is much narrower. His suit targets only Bishop's conduct on October 9, 1999, and only as it relates to Finan. The complaint does not address the harassment of other union members, the harassment of Finan before October 9, or Bishop's attempt to sabotage Finan's subsequent job search. Contrary to defendants' suggestion, the plan to harass or punish union members is not co-extensive with the means challenged in Finan's amended complaint.

The mere fact that Finan filed an NLRB charge before filing this suit does not, standing alone, establish preemption, nor do the cases cited by defendants stand for such a notion. Defendants make much of the Eleventh Circuit's pronouncement that *Garmon*'s "primary

7

jurisdiction rationale has the greatest validity when a party has sought redress for his claims from the NLRB and in the face of an adverse decision the claims are restructured as state law claims and pursued in state court." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1517 (11th Cir. 1988). This court does not believe that this language can be expanded so as to preclude any state law claims that have a common factual nexus with a previously filed NLRB charge. Even the *Parker* court itself recognized – and separately evaluated the applicability of – certain exceptions to the *Garmon* preemption doctrine. In that regard, the court concluded that "allowing state law fraud claims for conduct that would also be a violation of the employer's duty to bargain in good faith would necessarily undermine the Board's exclusive jurisdiction and may subject the employer to conflicting substantive rules." *Id.* at 1518. Significantly, the court observed that "the substance of the employees' labor charge and their state fraud claims are identical," and "[t]he facts and allegations of both claims are also identical." *Id.* "In such circumstances," the court ruled, "it would not be proper to allow the employees to escape the *Garmon* preemption doctrine through artful drafting." *Id.*

In sharp contrast to the allegations brought by the employees in *Parker*, Finan has not simply relabeled his NLRB charge as a state law claim. As discussed above, the narrowed scope of his complaint and distinct evidentiary showing needed for recovery would allow the court to resolve his IIED claim without touching on the legal merits of his NLRB charge. The court does not believe that the concerns motivating the *Parker* court's preemption holding compel the same conclusion under the circumstances of this case.

Defendants also look to *Davis Supermarkets, Inc. v. NLRB*, 2 F.3d 1162, 1178 (D.C. Cir.

1993), in which the D.C. Circuit relied on the *Garmon* Court's holding that preemption occurs when an activity is "arguably subject" to sections 7 or 8 of the Act. The court then recounted the stringent investigation conducted by the General Counsel in order to determine if the Act has been violated, and concluded that the employer "cannot credibly contend that a claim that makes it through this gauntlet does not concern conduct 'arguably' protected by the NLRA." *Id.* Accordingly, the court found "that the federal preemption is triggered by the issuance of a complaint by the [NLRB] General Counsel, if not earlier." *Id.*

In this case, the NLRB Regional Director – subject to a right to appeal to the General Counsel – refused to issue a complaint because he found no "creditable evidence" that the Act had been violated. (Exh. C to Bishop Decl.) In light of such a finding, defendants are too quick to presume that the conduct alleged in Finan's charge is "arguably subject" to sections 7 or 8 of the Act. In any event, the NLRB's finding clearly removes this case from the ambit of *Davis Supermarkets*. This court concludes that Finan's previous filing of a charge with the NLRB does not preclude his current amended complaint from coming within an exception to the *Garmon* preemption doctrine. Further, under relevant case law – most notably *Farmer* and *Keehr* – the court concludes that the allegations of Finan's amended complaint do warrant such an exception.

The second basis of defendants' preemption argument is section 301 of the LMRA. According to defendants, Finan is alleging a violation of the collective bargaining agreement, and such a claim must be pursued through the grievance procedures provided by the CBA. The court disagrees. "The mere fact that [an employee] might be able to grieve [the employer's] conduct under procedures provided in the collective bargaining agreement is not sufficient in itself to

conclude that [the employee's] tort claims are preempted." *Keehr*, 825 F.2d at 137. Instead, the "crucial issue" is "whether the state law tort claim being asserted purports to give meaning to the terms of the labor contract." *Id.*

In finding that the claims before it were not preempted, the *Keehr* court insightfully distinguished cases in which courts found that tort claims were preempted by section 301. In *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984), an IIED claim was preempted because the employee was alleging only that he was fired without good cause and that he suffered emotional distress as a result. The claim would thus turn on whether there was good cause for his firing – a question requiring CBA interpretation. And in *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir. 1987), a claim for invasion of privacy was preempted "because resolution of his claim would involve consideration of the employer's power under the collective bargaining agreement to conduct searches of employees and their cars when drug use is suspected." *Keehr*, 825 F.2d at 138 n.6. By contrast, in *Keehr*, as in this case, "the employee's claim revolved around conduct by his employer that is not even arguably sanctioned by the labor contract." *Id.*

Finan's IIED claim is completely independent of any rights or obligations provided for in the CBA – Finan will not be able to establish liability, nor will defendants be able to rebut a liability showing, by invoking the CBA's terms. The resolution of the IIED claim will not require any reference to, much less an interpretation of, the CBA. Accordingly, the claim is not preempted by section 301. *See id.* ("Because the resolution of [the employee's] tort claims in no way depends on an interpretation of the labor contract, we conclude that [the employee's] claims

are not preempted by section 301."); *see also Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir. 1987) (holding that IIED claim was not preempted because the "collective bargaining agreement does not envision such [outrageous] behavior" by employer and "its grievance mechanism is not equipped to redress it").

Given the court's conclusion that Finan's state law claim is not preempted under federal law, federal question jurisdiction does not exist, and removal of this case was not proper. *See generally Anderson v. American Airlines, Inc.*, 2 F.3d 590, 594 (5th Cir. 1993). Because this court lacks jurisdiction over the case, the court declines to address defendants' argument that Finan has failed to state a valid IIED claim under Illinois law. The case is remanded to state court.

## Conclusion

For the above reasons, defendants' motion to dismiss is denied. This case is remanded to state court.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 1, 2000